RECEIVED
IN LAKE CHARLES, LA.

MAY 21 2012

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| PAUL SIMIEN | : | DOCKET NO. 2:08 CV 01395 |
| VS. | : | JUDGE MINALDI |
| COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is petitioner's petition for review of the Commissioner's denial of Social Security Disability benefits. This matter is before the court pursuant to 42 U.S.C.A. §636(b)(1)(B).

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), this court finds that the Commissioner's decision is not supported by substantial evidence in the record. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

ADMINISTRATIVE HISTORY

The petitioner, Paul Simien ("Simien"), initially applied for a period of disability and disability insurance benefits under Title II of the Social Security Act on February 7, 1997. In a decision dated February 19, 1999, Simien was found to be disabled as of March 3, 1994. (Tr. 48). On August 29, 2001, the Administration determined that Simien was no longer disabled as of August 1, 2001. (Tr. 54). This determination was upheld upon reconsideration by a State agency Disability Hearing Officer. (Tr. 55).

1

An administrative hearing was held on June 17, 2003, in Lake Charles, Louisiana, and an unfavorable decision was issued on November 10, 2003. Review of the decision was granted by the Appeals Council. (Tr. 115). A hearing was held on August 10, 2006. An unfavorable decision was issued on October 25, 2006, upholding the cessation of benefits. (Tr. 31-42).

Within the 2006 decision, the ALJ found that the comparison point decision ("CPD") was the decision dated February 19, 1999. (Tr. 22). The ALJ noted that at the time of the CPD, Simien had the following determinable impairments: chronic lumbrosacral myofascial pain syndrome, cervical disc disease with radiculopathy, herniated nucleus pulposus, epididymitis, and depression. These impairments resulted in the ability to perform not more that the full range of sedentary work, reduced by moderate loss of ability to maintain attention and concentration for extended periods; moderate loss in ability to understand, remember and carry out detailed instructions; and the need for two hours recumbent rest during an eight-hour workday. *Id.* The ALJ then followed an eight-step evaluation process to determine whether Simien remained disabled, and the ALJ found that he did not.

Simien timely requested a review by the Appeals Council, and that review was denied in a letter dated July 8, 2007. (Tr. 12). Simien then filed this action.

## STANDARD OF REVIEW

This court reviews the Commissioner's denial of Social Security benefits only to ascertain (1) whether the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.[1] Substantial evidence is that which a

---

[1] *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000).

2

reasonable mind might accept to support a conclusion.[2]  "It is more than a mere scintilla and less than a preponderance."[3]  When the court applies the substantial evidence standard, the court "scrutinize[s] the record to determine whether such evidence is present.  [The court] may not reweigh the evidence, try the issues *de novo,* or substitute our judgment" for that of the Commissioner.[4]

The Commissioner may terminate disability benefits if substantial evidence demonstrates that: (1) there has been any medical improvement in the individual's impairment(s), and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1); *Griego v. Sullivan*, 940 F.2d 942, 943-44 (5th Cir. 1991). The Commissioner has the burden of showing medical improvement in a termination case. *Griego*, 940 F.2d at 943-44.

The regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] was disabled." 20 C.F.R. § 404.1594(b)(1). To support a finding of disability cessation, medical improvement must relate to a claimant's ability to do work. 20 C.F.R. § 404.1594(f)(4). Medical improvement is considered to be related to the ability to work if it causes an increase in the individual's functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3).

Simien raises two claims of error: (1) that the ALJ erred in finding that Petitioner experienced medical improvement, and (2) that the ALJ did not properly consider opinions from Dr.

---

[2] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

[3] *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir.1995) (internal quotation marks omitted).

[4] *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994) (citation omitted), *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *see Newton,* 209 F.3d at 452.

R. Dale Bernauer. *See* Petitioner's Brief at 6-10.

## Medical Improvement

The issue before the court is whether the ALJ's finding that Simien underwent medical improvement is supported by substantial evidence.

Disability benefits may be terminated if there is substantial evidence demonstrating that (1) there has been a medical improvement related to the ability to work and (2) the individual is now able to engage in substantial gainful activity.[5] Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to do basic work activities.[6] The Commissioner has the burden to prove the claimant is no longer disabled as of the cessation date.[7]

The Fifth Circuit has stated in dicta that the medical improvement standard applies only in termination cases-that is, where the government seeks to halt the ongoing payment of benefits. *See Richardson v. Bowen*, 807 F.2d 444, 445 (5th Cir.1987). Under the medical improvement standard, the government must, in all relevant respects, prove that the person is no longer disabled. *See* 42 U.S.C. § 423(f); *Griego v. Sullivan,* 940 F.2d 942, 943-44 (5th Cir.1991); *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002).

Simien was born on March 4, 1959. He has a limited education, and his past relevant employment consisted of work as a warehouse and shipping worker. Simien's impairments both at

---

[5] 42 U.S.C.A. § 423(f)(1).

[6] 20 C.F.R. § 404.1594(b)(3).

[7] *Waters v. Barnhart,* 276 F.3d 716,717 (5th Cir. 2002).

the time of the CPD and on August 1, 2001, involved musculoskeletal problems of his back, spine and shoulder, and nonexertional impairments related to depression, anxiety and personality disorders.

In 1994, Simien had MRI, CT and myelogram studies done on his cervical and lumbar spine. (Tr. 758, 762, 771). The myelogram revealed anterior extradural defects at L3-4, L4-5, C3-4, C4-5, and C5-6. (Tr. 757). The CT showed C3-4, C4-5, and C5-6 spondylosis with borderline central canal stenosis and borderline right neural canal stenosis. (Tr. 763-764). Disc bulges and central canal stenosis was also noted at L2-3, L3-4, and L4-5. (Tr. 764-765). The MRI showed disc protrusion at C5-6. (Tr. 771). Records from Dr. Gunderson covering 1994 through 1997 reflect complaints of pain, tenderness, and a reduced range of motion in the cervical and lumbar spine and headaches three to four times a week. (Tr. 77-792). Dr. Gunderson noted reduced sensation in both hands and a positive straight leg test at 60 degrees bilaterally.

Medical records from Team Therapy Rehabilitation Services covering 1995 to 1997 showed nerve conduction and electromyographic studies yielding findings consistent with chronic myofascial pain syndrome. (Tr. 793). Simien's posture and body mechanics were noted to be impaired. Dr. Gorin stated that Simien was at maximum medical improvement in 1996 and 1997. (Tr. 794-97). Radiographs of the lumbar and cervical spine taken in 1997 showed kyphosis, degenerative spurring, and scoliosis. (Tr. 815-816). Stenosis was again noted at C4-5 and C5-6 in records from W.O. Moss Regional Medical Center covering the period from 1997 to 1998. (Tr. 847, 851). An MRI of the spine taken in 1998 revealed stenosis, disc herniation, spurs, and narrowing of the existing foramen of the right C6 Simien had a cervical anterior fusion and diskectomy on September 10, 1998, resulting from a diagnosis of cervical disc disease with cervical radiculopathy and herniated nucleus pulposus.(Tr. 897-98, 912). Post-surgical radiographs showed a loss of disc space, bone spurring at multiple levels,

and widening of the prevertebral soft tissues. (Tr. 895).

The ALJ noted in his decision that, as of February 1999, the time of the original favorable decision, Simien was five months post-surgical fusion of his cervical vertebrae, and his medical condition was expected to improve as a result (Tr. 22-23). MRI examinations on May 29, 1998 showed spinal canal stenosis at C5-C6 and joint spurs narrowing the nerve root foramen at C4 and C5 (Tr. 847-848). On September 8, 1998, the petitioner underwent spinal fusion from C4 to C6 by Dr. Donald Smith (Tr. 897-898, 911-913). The Commissioner asserts that there is no documentation of post-surgical complications or significant medical treatment through 1999.

Dr. Logan Perkins performed an annual checkup examination on the petitioner on August 25, 2000, and noted no musculoskeletal abnormalities (Tr. 300-301). Consultative physician Dr. Anand Roy examined the petitioner on July 30, 2001, observing generalized 4/5 weakness, normal reflexes, decreased range of neck motion, and limited range of left shoulder motion (Tr. 355). Neurologist Dr. Sleiman Salibi examined the petitioner on November 5, 2001, noting intact motor strength, sensation, and reflexes (Tr. 381). Dr. Salibi also found that the petitioner was able to walk steadily, including tiptoeing and walking on heels, despite bringing a cane to the examination (Tr. 381). Based on this evidence, the ALJ determined that the petitioner had experienced medical improvement as of August 1, 2001, due to a decreased level of impairment (Tr. 22-24).

The ALJ noted that the petitioner's post-surgical records did not show "any serious problems with his back or neck" (Tr. 24). The Commissioner asserts that the normal examination findings in Simien's post-surgical medical reports are substantial evidence establishing that the Commissioner met the burden of showing medical improvement relating to the petitioner's ability to work.

Simien argues that the ALJ did not meet the burden of showing medical improvement, arguing

that "an analysis of [his] medical improvement was not performed" and that "the ALJ cites to no facts which demonstrate medical improvement." See Petitioner's Brief at 6-9.

Simien submits that medical records from 2000 show decreased reflexes in the right lower extremities, complaints of migraines, and an assessment of chronic neck pain. (Tr. 313, 315). A consultative examination completed by Dr. Roy in July of 2001 showed a decreased range of motion, decreased sensation on the L4-5 distribution, 4/5 generalized weakness, and diminished pushing and pulling with the forearm, upper arm, and lower legs. (Tr. 354-55). Dr. Roy's impressions were generalized weakness, generalized arthritis, decreased range of motion in the neck and left shoulder, grinding in the knees and shoulders, and positive bilateral leg raise at 80 degrees. Id.

Medical records from 2001 show a diagnosis of neuropathy with physical jerking and note a stumbling gait. (Tr. 343, 351). Records from October and November of 2001 include a nerve conduction study which revealed findings suggestive of mild demyelineating sensory neuropathy and L5 radiculopathy of the left. (Tr. 399). An MRI indicted disc bulging or osteophytic ridging at the L1-2 level; triangulation of the central canal at L2-3 secondary to ligamentous and facet hypertrophy; diffuse annular disc bulging with superimposed left lateral disc protrusion at L3-4; central canal stenosis and some narrowing of the left neural canal; disc bulging with left lateral disc protrusion at L4-5 with mild central canal narrowing and narrowing of the left neural canal and lateral recesses; and disc bulging at L5-S1 to the left with central canal narrowing, disc dessication, and discogenic change. (Tr. 402).

Simien argues that the ALJ did not refer to medical records from 2001, which show a diagnosis of neuropathy with physical jerking and note a stumbling gait. (Tr. 343, 351). Records from October and November of 2001 include a nerve conduction study, which revealed findings suggestive

of mild demyelineating sensory neuropathy and L5 radiculopathy of the left. (Tr. 399). Nor did the ALJ discuss the MRI that indicated a disc bulging or osteophytic ridging at the L1-2 level; triangulation of the central canal at L2-3 secondary to ligamentous and facet hypertrophy; diffuse annular disc bulging with superimposed left lateral disc protrusion at L3-4; central canal stenosis and some narrowing of the left neural canal; disc bulging with left lateral disc protrusion at L4-5 with mild central canal narrowing and narrowing of the left neural canal and lateral recesses; and disc bulging at L5-S1 to the left with central canal narrowing, disc dessication, and discogenic change. (Tr. 402).

A Patient Questionnaire completed by Simien's treating physician, Dr. Bernauer, in June of 2003, showed a diagnosis of herniated nucleus pulposus of the lumbar spine confirmed by clinical evaluation, impingement of the shoulder, and carpal tunnel syndrome. (Tr. 414). Dr. Bernauer noted that Simien had marked to severe restrictions in the following: his activities of daily living; maintaining concentration, persistence, or pace; and functioning independently outside the area of his own home. *Id.* Simien also had a substantial loss in his ability to safely and effectively cope with stress; maintain consistency and pace; interact with coworkers and supervisors; and to sit, lift, stand, push, or pull. (Tr. 415). The doctor also assessed a substantial deficit in Simien's ability to climb. In October of 2003, Simien had shoulder arthroplasty which was necessitated by left shoulder impingement syndrome. (Tr. 472-73). Records from Dr. Bernauer covering the period after the surgeries on Simien's wrists and shoulder show a ten percent permanent disability to the shoulder and a five percent permanent disability on both hands. (Tr. 510). Dr. Bernauer also noted that Simien had spinal stenosis with a herniated disc at L4-5, which was putting pressure on the back and which would require surgical intervention. (Tr. 506).

8

The Residual Functional Capacity Assessment by Dr. Ryder in December of 2004 showed a diagnosis of herniated nucleus pulposus of the lumbar spine and bilateral carpal tunnel syndrome. Dr. Ryder also indicated that Simien suffered from chronic pain. (Tr. 556). Simien's symptoms included chronic pain and paresthesia, muscle weakness, reflex changes, and significant limitation of motion. Simien's cervical range of motion was limited to ten percent in rotation and lateral bending and twenty five percent in flexion. *Id.* Yet the Commissioner asserts that the reports from Dr. Perkins, Dr. Roy, and Dr. Salibi show either minimal or no physical limitations and that these findings showed that the petitioner had a physical capacity greater than the residual functional capacity assessed in the original favorable decision, which limited Simien to sedentary work with a "need for two hours recumbent rest each eight hours." (Tr. 22).

In determining whether or not to terminate benefits, the Commissioner may not decide just that Simien's medical condition has improved, but also that his functional condition has improved. Where the claimant's functional abilities remain unchanged, a finding of medical improvement is unwarranted.[8] In discussing the change or lack of change in Simien's functional condition, the ALJ discussed the depression that had existed at the time of the CPD (Tr. 24), and he stated that, based "on improvements as of the CPD, the residual functional capacity the claimant had as of August 1, 2001, is less restrictive than the one the claimant had at the time of the CPD." (Tr. 25).

In assessing Simien's disability, the ALJ granted "little weight" to opinions from Dr. R. Dale Bernauer and Dr. Garrett Ryder from the Bernauer Clinic, stating that the petitioner was unable to work (Tr. 27). Orthopedic surgeon Dr. Bernauer completed a pre-prepared form dated March 6, 2006,

---

[8] Social Security Disability Law and Procedure ☒2:15; *Kennedy v. Astrue*, 247 Fed. App'x 761, 765 (6th Cir. 2007).

stating that Simien was required to lie down or recline for 4 hours per 8-hour work day, could stand or walk for no more than 30 minutes; must frequently change positions; could lift no more than 10 pounds; could never perform postural activities such as bending, squatting, stooping, or reaching up; and would frequently miss work due to pain (Tr. 608-613). Dr. Bernauer also wrote a "to whom it may concern" letter dated May 8, 2006, stating "I think [the petitioner] is disabled from any type of gainful employment" (Tr. 571). Dr. Ryder completed a pre-prepared form dated December 21, 2004, that opined essentially the same level of restriction as Dr. Bernauer (Tr. 556-561).

Simien argues that the ALJ followed incorrect legal standards in evaluating the treating source opinions. In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009). The rationale behind the rule is that treating physicians are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the Claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Kalmbach v. Commissioner of Social Sec.,* 409 Fed. App'x. 852, 860, 2011 WL 63602, at *7 ( 6th Cir. 2011).

The ALJ may reject an opinion of a Claimant's treating physician if the opinion is either (1) not supported by medical evidence, or (2) inconsistent with other substantial evidence in the record. *Id.*; *Spellman,* 1 F.3d at 364.

The ALJ must give a treating source opinion "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is not inconsistent with the other substantial evidence in [the] case record." *Id.* Even if the ALJ does not give controlling weight to a treating physician's opinion, he must still consider how much weight to give it. In doing so, the ALJ must take into account the length of the treatment relationship, frequency of examination, the extent of the physician's knowledge of the impairment(s), the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, whether or not the physician is a specialist, and any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)–(6).

The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons" that are "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5. This procedural "good reason" rule serves both to ensure adequacy of review and to permit the Claimant to understand the disposition of his case. *Rogers,* 486 F.3d at 242.

The Commissioner argues that Simien's records from the Bernauer Clinic do not provide a basis for the extreme level of restriction that Dr. Bernauer and Dr. Ryder opined. The June 2003 record from Dr. Bernauer (as noted above) shows a diagnosis of herniated nucleus pulposus of the lumbar spine confirmed by clinical evaluation, impingement of the shoulder, and carpal tunnel syndrome. (Tr. 414). Dr. Bernauer noted that Simien had marked to severe restrictions in the following: his activities of daily living; maintaining concentration, persistence, or pace; and functioning independently outside the area of his own home. *Id.* Simien also had a substantial loss in his ability to safely and effectively cope with stress; maintain consistency and pace; interact with coworkers and supervisors; and to sit, lift, stand, push, or pull. (Tr. 415). The doctor also assessed

11

a substantial loss of ability to climb, balance, kneel, crouch, crawl, and reach in all directions. *Id.*

In October of 2003, Simien had shoulder arthroplasty, which was necessitated by left shoulder impingement syndrome. (Tr. 472-73). Records from Dr. Bernauer covering the period after the surgeries on Simien's wrists and shoulder show a ten percent permanent disability to the shoulder and a five percent permanent disability on both hands. (Tr. 510). Dr. Bernauer also noted that Simien had spinal stenosis with a herniated disc at L4-5 which was putting pressure on the back and which would require further surgical intervention. (Tr. 506).

The Commissioner asserts that examinations by Dr. Salibi, Dr. Roy and Dr. Perkins controvert the opinions offered by Dr. Bernauer and Dr. Ryder. Simien points out that while Dr. Salibi's report did note intact motor strength, sensation and reflexes, his exam also included an EMG study which found neuropathy, L5 radiculopathy, and possible spinal or foraminal stenosis. (Tr. 382). Dr. Roy noted a generalized weakness, positive straight leg raise tests, a limited range of motion, difficulty walking on heels, and opined that Simien needed a cane to walk. (Tr. 355). Dr. Perkins's examination focused more on urinary problems than musculoskeletal issues. (Tr. 300-301).

This court finds that the findings of Dr. Roy, Dr. Salibi and Dr. Perkins do not fully controvert the findings of Dr. Bernauer and Dr. Ryder. The ALJ did not properly consider Dr. Bernauer's and Dr. Ryder's opinions.

Accordingly the decision of the ALJ is REVERSED and this case is REMANDED to the Secretary for further proceedings consistent herewith.

Lake Charles, Louisiana, this 21 day of May, 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE